Good morning. May it please the court, Bruce Edwards, Michigan Assistant Attorney General on behalf of the warden who is the appellant and the cross appellee. In 2005, Petitioner Mark Bailey was convicted of the 1989 murder of a 79-year-old woman. Bailey's habeas petition alleged two violations, Holmes v. South Carolina, which speaks of admitting evidence potentially pointing to a third person who might have committed the crime, and then Brady v. Maryland, which says it's a due process violation if evidence is suppressed that was prejudicial to your case. The magistrate judge carefully reviewed both of these claims, issued a 43-page report and recommendation, and suggested or recommended that the claims be denied because the state court resolution of them was not unreasonable or contrary to Supreme Court precedent. The district court saw things differently, but it's the state's position that as in Harrington v. Richter, the district court improperly treated the unreasonableness question as a test of its confidence in the result it would have reached under de novo review, and that is not allowed under AEDPA. I'm asking this court to reverse the district court because all fair-minded jurists would not disagree with how the state court resolved these claims. That high standard has not been met. While the Holmes and Brady questions might be close, the AEDPA question is not. It is within the realm of possibility that a fair-minded jurist could find the evidence of third-party guilt was too attenuated, and that the suppressed fingerprint report was not prejudicial because it was only cumulative to Bailey's young age of being 10 or 11 at the time the earlier crime had been committed. Now, the Holmes claim, in Holmes the Supreme Court said a state court can refuse to admit evidence suggesting a third-party guilt if the connection between the two crimes is too speculative or remote or there's an inadequate connection. The Michigan Court of Appeals specifically said we have considered the similarities and the differences between the 1980 murder and the 1989 murder, and having considered the similarities and differences, we find that the trial court's decision that there was an insufficient connection is sustainable. Now, the district court said, oh, these crimes are so similar, so identical, that was just an egregious constitutional violation. But the district court really overlooked the differences, and I would point the court – Did the district court ignore differences, or was the district court's basis that when you look at this issue, the Brady claim with the embedded Holmes claim, you have to recognize what the court knew or would have known, and that's based on the FBI report. It seemed to me what the court was saying was that if you put yourself in the shoes of law enforcement at the time this second murder occurred, you have to ask yourself, what was it that they were assuming? Well, when they looked at the two crimes, the 1980 and the 1989 crime, they thought that there was a remarkable similarity in the way these murders of elderly women were undertaken, so much so that they wanted to examine that. And when they examined it, and got a report back from the entity, the FBI, that said, we think it's a single perpetrator, then their response at that point was to decide not to prosecute. So that's not – I think that that's a distinction, because what you're looking at is the law enforcement, the decision of the law enforcement officers at that time, that they thought that there was such similarity between the crimes that when they sent the fingerprints, and the fingerprints didn't match, they excluded this person from charging. Now why doesn't that make a difference in this case? Well Your Honor, the decision to prosecute is made by the prosecutor, not by the police, and a new prosecutor took office in Mecosta County, he looked at it, and he said, I think there is enough here for us to prosecute, even if the earlier prosecutor didn't. So I really think that, but there were two reports. There was a Michigan State Police profile report, and then the Quantico report. The District Court focuses exclusively on the Quantico report, but the Michigan State Police report is a much fairer report, in my opinion. I could refer the Court to page ID 174. The Michigan State Police really laid out the differences that really make the key in here, and the two key differences are sexual motivation behind the crime, and theft. And the Michigan State Police report focuses on both of them. They say, her panties and slacks were pulled down to her ankles, the purse was open, the wallet was lying next to it, she was taken into the bathroom, she was stabbed with a gun, she was sexually assaulted at this location, the killer took as little money in the victim's wallet and her car keys, and stole her car. So the Michigan State profile focuses on a sexual component, pulling her pants and her pants down, stabbing her in the vagina area, and rectum, and also stealing money from her purse and her wallet were empty, and taking her car. So those are two key points that was in the Michigan State Police report, that the District Court sort of ignores, and the FBI downplayed both of those. And we have to keep in mind, profiling is more art than science, and these profiles were from 1989 and 1990, 27 years ago, a long time. And the question... Did the FBI know of the age of the... the fact that the first one would have been committed by a 10-year-old, or was the... or were the facts given to the FBI without regard to any particular person, just these are two crimes? Probably the latter, but I'm not entirely certain, Your Honor. I'm sorry, I don't know exactly, you know, who made the referrals and what was provided, necessarily. I mean, actually... I mean, I just think that, you know, if you look at the similarities that the FBI report relied upon, which are laid out in great detail in the briefs, and I guess Judge Maloney too, all right, laid out how similar they are, it seems to me that a police person might say, and therefore you should continue to investigate on the theory, at least, that it was committed by the same person. Then, if they were told, however, yeah, but the person we're thinking about is somebody who would have only been 10 in the first one, does that change your view? It would seem to me, when you read that, that it probably would change their view, but if they knew it, then I wouldn't be able to say that, and I'm not talking about me, I'm talking about what the state courts would have found was speculative or not, because when this kind of evidence is given to the jury, it's going to be with respect to somebody who was only 10 years old at the time of the first one, but we just don't know the answer to that, or the state court might have known the answer to that. Yeah, the state court might have known the answer to that, but I don't think that we do. But, you know, there were similarities. Certainly not in the opinion. Pardon? Not in their opinion. That's right, that's right. I mean, it is so, it seems so important that, to one's thinking about it, that you'd think it would be in there if they knew, so I, yep. You know, but all we do is ask whether or not the actual result reached is an unreasonable application of Supreme Court precedent. But it comes through a Brady claim with an embedded Holmes claim, and the key in that standard is whether what occurred undermines confidence in the verdict. Right, and that's where my argument is, is that the fact that the defendant, Bailey, was 10 or 11 at the time the first crime occurred, that is at least as exonerating as the fact that his 10 or 11-year-old fingerprints did not match some fingerprints found at the crime scene of the 1980 murder. It really doesn't add very much, quite frankly, and it certainly doesn't put the case in an entirely different light. It doesn't make the prosecutor's case much weaker. Well, it's not Graham who was convicted of the first murder. That's correct. He did not live in Michigan at the time he committed that murder. That's right, he was traveling through Michigan. And he didn't live in Michigan at the time of the murder. He was in California, from what I understand, at that time. I guess I'm just struggling with whether the failure to let the middle reviewing courts in Michigan know of this possibility. It seems to me that it kind of obscures the arc of the investigation, and then we're back to the does that undermine confidence in the verdict, which the Michigan intermediate courts never had the opportunity to determine because of the Brady violation. But as I mentioned in my brief, Brady looks at its effect on the trial, not the subsequent appeal. And the Michigan Court of Appeals knew he was 10 or 11, and would the fact that a 10 or 11-year-old's fingerprints didn't match an earlier crime scene all of a sudden make them think, oh my word, that's, you know, routinely we find 10 and 11-year-old's fingerprints at murder scenes, you know, where elderly women are beat to death. That just doesn't happen. So it really wouldn't have been, it just would have been cumulative to the fact that his age basically disqualified him from having committed the first crime. I want to ask a question, but I'm not sure I can articulate it clearly. Wouldn't the Brady issue depend a little bit, or maybe significantly, on why the Michigan appellate court thought it was speculative before it had that information? If it thought it was speculative because a 10-year-old could have committed it, and therefore it's not exonerating, then this information would have a big effect. If they thought it was speculative because these crimes were really not all that the same, they had this and that difference going on, then the new evidence wouldn't have changed their analysis. Right. And given the difference. Are you following me? So a little bit, it depends on the reason they thought it was speculative, and I'm wondering whether that isn't a fair way to look at it. Well, but they specifically said it's too attenuated after looking at... And when they say it's attenuated, they're talking about... The connection between the two crimes. The relation between the two murders, they're not talking about whether it's conceivable. The relation between the two murders. Because the argument is made, and I think this may be what Judge Maloney was going off of, that there was this argument that a 10-year-old could have committed it. And so the reason that it was speculative was because he thought a 10-year-old could have committed it, and so it wasn't really exonerating, all right? I just don't think that's a fair... I'm sorry? I don't think that's a fair reading of the Court of Appeals opinion. Why not? Because they say, looking at the similarities and the differences between the two crimes, and the differences, the highlight... First time around, they say that. Pardon? First time around, they say that. Before they get the new evidence, they say that. Well, they didn't say anything the second time around. They just... So and Brady... It's clarifying. I understand your answer. And Brady... Because the first time around, they relied mostly on the difference between the two crimes and not on the possibility that a 10-year-old could have committed the first crime. I believe that's correct. I see my time is up. I'll keep my three minutes for rebuttal. Good morning. I'm Helen Neuenhuis. I represent Mark Bailey, the petitioner, and the appellee in this case. I would like to follow up just a little bit on the questions that were asked regarding the age of Mr. Bailey and part of the argument that the state at the time, when this was being looked at by the Court of Appeals originally, it was their very argument that they made in regards to those detailed reports by those experts that a 10-year-old potentially could have done this because in those reports, that individual could have been as young as perhaps 13. So in the context of when this case was going on, it was really an argument that, hey, by the way, these reports are not all that helpful to Mr. Bailey because, in fact, they could actually point the finger at Mr. Bailey even though he had this argument that he was only 10 at the time of the first homicide. How do we know the district... I mean, the Court of Appeals reasoned that way? Objectively, from my perspective, it seems less likely than the other, but if there's evidence that that's how they... The whole idea that they ruled that way is based on what was argued to them, not on what they said, isn't it? Yes, and those arguments were... But they were not bound by the arguments, and the arguments are based on 13-year-old rather than 10, which is a pretty big difference, actually, when you're talking about knifing someone, and so why isn't it, if not definitive, at least it's reasonable to assume that the state court, after they got the Brady evidence, or the allegedly Brady evidence, reviewed what they did before and identified it as finding speculation based on differences between the two crimes rather than on the possibility that a 10-year-old might have done it? That could potentially be the case. However, when they are looking at everything, of course, the Court of Appeals, in their first opinion that after the 6500 motion was filed and that court kind of adopted that rationale from the original Court of Appeals, that was done, as was pointed out in Judge Maloney's opinion, really in a vacuum because that Bailey evidence, or the Brady evidence, which was in regards to the fingerprints, was unknown to them. Was unknown to them the first time? Yes. The first time around, I know. But what I'm saying is that when the later court evaluated whether this new evidence made a difference, that analysis would have depended to a certain extent, would it not? That's my question. On what they took the Court of Appeals to have been reasoning before. And why couldn't they say, well, look, they said that these, we're looking at the differences and the similarities between the two crimes, and it doesn't seem like they were close enough, they're reading that, to say that this evidence is more than a hypothesis, that's a reasonable analysis, and then you lose under AEDPA. That's what I'm not understanding, why you don't. I mean, sure, they could have said, oh, no, what the Court of Appeals was really saying, this was speculative, it has to do with whether a ten-year-old could commit the crime. But if the basis for saying that it was speculative, and implicitly they said it was speculative because that's how they ruled, was because the crimes were not sufficiently identical. If that's the basis for the first determination, then it really makes no difference. It even kind of supports the decision to say, no, the first crime could not have been committed by this person. Well, when, I was going to say, when reviewing the opinion, I don't know if we can come to that conclusion that that's what they based their rationale on. There's nothing that goes beyond that and starts talking about the dissimilarities of these, what we have referred to as signature crimes. So why then, so you're saying when it's not clear, we're bound by what was argued to them rather than what we might reasonably assume was their analysis? Well, I think it certainly has to be looked at, yes. You see the concern I have, at least. Yes, I definitely, yes, I do. Yes, I do. I would like to highlight a couple of things. One is that this issue, which kind of developed over time, first began with the argument that Mr. Bailey was denied his right to present a defense. They had asked to have not only these reports, but the fact that there had been a murder in this small town, very alike and similar in nature, and all of those very details that were in that report that experts, not ones that Mr. Bailey had hired, but the individuals to come in and look at these crime scenes and make an analysis. And then as time went on and he was denied doing that, it wasn't just that the knowledge of the similarities was not allowed to the jury. It was also the fact that there had been a prior homicide that very arguably Mr. Bailey could show he was not the perpetrator in that. And if those connections of those two were not brought before the jury, that's really the heart of that being able to argue third-party guilt. If you're not allowed to point that finger and you have the evidence that you should be allowed to point that finger at another individual, he was stopped from really raising a kosher defense at that point. And then we find out later, after discovery on his habeas, that in fact, way back when, they thought enough of the fact that Mr. Bailey potentially could have done this crime at the age that he was, that they ran his fingerprints. That's a real issue that they wanted to examine the fingerprints because they thought the crimes were so alike. What reason would you have, particularly with the Quantico report, of seeking to put this before the jury except that it gives the jury an opportunity to consider third-party guilt, but it also gives the jury an opportunity to consider what the state thought was third-party guilt? Yes. I would agree. I would agree. Is that enough, is the real question. Is that enough to survive Ithaca? And if so, why? I think it is enough because although the state argues that this fingerprint evidence really is just cumulative, it really wasn't cumulative because when these decisions were being made and in fact the state knew about this, that's when they were actually making arguments that potentially it could be Mr. Bailey and they knew it wasn't Mr. Bailey on the first homicide. And so when you take that in connection with his argument that he was denied his right to, under Holmes, be able to point the finger and show the third person guilt whole issue and then we have a Brady violation after that, I think it does rise to that. I think that I can't see it another way, I guess. And maybe it's because I've been working with the file for years and years and years, but when you look at this, he's first stopped from going into third-party guilt and then when he has some forensic evidence that really supports that and that the state had that originally, and then he finally gets it and... It isn't forensic evidence that increases the likelihood that both crimes were committed by the same person. It's forensic, it's new forensic evidence that's either neutral with respect to that issue or maybe even cuts against that issue. I guess I see nowhere in the... There seems to be, to me at least, to be the key weakness. The key reason it's speculative is that they don't look that similar, other than the wire. The wire is kind of strange. I understand that there was a wire around the neck in each case, right? That is correct and it was not an instrument of the death. Exactly. This was an electrical cord around it and they said it was that person's... The fact that there's an old lady that lives by herself in a certain place is just... Their manners of death were the same. They had massive head injuries, they had stabbing, and that FBI report went very carefully through the very things that the state is saying that were the differences and came to other conclusions and at that time, it's very hard to forget what happens later, but at that time, that's what they were looking at. They said that in neither case did they come up with this idea that the murders were motivated by a theft and the state is arguing that one of these women were sexually abused. That was not in that FBI report either that was very detailed. They actually went into the details about how that this was an actual crime of rage, not necessarily a sexual assault. The fingerprints didn't affect that analysis is what I'm asking. All of that similarity of the crimes, whether you find it extremely coincidental or whether you find it not that coincidental, however coincidental you find it, it's not increased or decreased by the fact that there's no fingerprints there. I guess that specific issue it might not be, but I think it certainly is very powerful evidence to support Mr. Bailey attempting to get into and be able to point a finger at third party guilt because if the underlying issue is that we do have this report by experts saying that in all likelihood the same individual committed these two murders. They had that before though, that report, right? Before the evidence got out. Yes. They had that. What I'm asking is you say, well, this is Brady evidence because it would have made a difference, but assuming that the original decision was okay, it wouldn't have made a difference because the original, if to the extent that the original decision is based on how tenuous the comparison is. I wanted to look up one thing because I just want to make sure that I'm citing the right court here, Your Honor. I may be confusing the courts as well. There's a lot of courts going on here. I was going to say, I believe that part of the ruling was is that the way the Holmes opinion was really applied was that it was arbitrarily applied because they were limited to Mr. Bailey having to present direct evidence. I can't recall, but at this moment ... That's the first issue that's argued. Okay. Okay. All right. How do you address these kind of layers of standards of review because under the Brady claim, the standard is whether it undermines confidence in the verdict, and then we overlay that with Ed. How do you see those two relating in this case? Because I think the undermining the confidence in the verdict with the Brady really does relate back to the original issue of the Holmes argument that he was stopped from presenting third party guilt. The two really are intertwined together. If the court's looking at the prejudices that came out of the Brady and whether or not that may change, really my understanding is that if it would change the verdict, and it doesn't have to be that all 12 people would find him not guilty, it's basically it has to come down to this issue of when we look at the light of everything at that time, whether or not that would have an impact on the verdict. I think the fact that the government has fought tooth and nail about the third party guilt, the issues about Bailey's age during that time, and one other issue was the fact of the 404B evidence, which I addressed somewhat in the brief where they pretty well made it clear that Mr. Bailey was actually, proved that it was his identity that had actually killed victim Pine. I really think when you're looking at these different standards, I think they kind of, I don't want to say blend together, but I think overall looking at it, you really do have to look at the whole issue of, especially in the Brady violation, the light or the change of the complexion of the whole case of how that would have happened. I'm out of time. Thank you, Your Honor. I do want to mention that the state has a harmless error argument that it has raised. If this court were to find that there were a Holmes versus South Carolina violation, you're still not entitled to habeas relief unless the court finds that the exclusion of the evidence had a substantial and injurious effect on the verdict, and here there are several things that point to Bailey's guilt. First of all, he admitted the crime to three different people. Confessions according to the U.S. Supreme Court are very significant, and in one of the early confessions, he specifically told the other person he used a fork that had never been released to the public. How did he know that? Are you responding to anything that the opposing counsel raised? Well, I wanted to make sure that I got my harmless error argument out. You haven't waived it, that's for sure. But part of the analysis is to whether or not you should grant relief is whether or not it can be underbreaked, and there is strong evidence. This is irrelevant. I'm just saying it's a different argument, isn't it? Technically, I guess it is, Your Honor, but I'll be very brief. He was seen driving a car identical or virtually identical to the victim's car. His shoes were the same size and same make and had a similar wear pattern. There was a fiber from a knit cap of his that was similar to a fiber found on a wooden rolling pen that hit the victim. There was a pen that had the word Pet Palace on it found at the location. The victim's daughter testified her mother did not have a pet and would never have any reason to go into the Pet Palace, and that's where Mr. Bailey worked. And several witnesses also testified that he acted very different, very strange on the day of the crime and soon thereafter. Do you have any response? Go ahead. I have one question. Your argument is that the opinion reflects that the decision was made based on the distinctions between the crime. Can you point me to where that is? I don't the memory goes with age, so it could well be me, but I don't remember there being that sort of expressed distinction in the opinion. Where can I find that? It's the Michigan Court of Appeals Direct Opinion, and they specifically say, although the issue is arguable on some level, after considering the similarities and the differences, we find that it was not an abuse of discretion for the trial judge to not admit this evidence. That's the exact wording that the Court of Appeals used. And that's the analysis you were referring to? Yes. Yes. They specifically said, we have considered the similarities and the differences, and they had the Michigan State Police report that documented the sexual component, and they had this Michigan State Police report that talked about the thefts that had occurred. They didn't go into all that stuff. They did not go into that, but they said, we have considered them. That's right. They had considered them. Were differences referred to anything else? Not that I'm aware of. That seems... The discussion was also rendered on remoteness. Well, the Holmes versus South Carolina says, if it's too attenuated, if it's conjectural, if it's too remote, if it's speculative, they use several words. But their discussion had to do with remoteness, didn't it? That was part of it, yes. That's right. And if they are differences, then it's remote, that there's a connection, would be the idea. Or it's remote in time. Oh, no. They're not talking about remote in time, because it's how the crimes were committed and, you know, the victimology and how the crimes were committed, that sort of thing is what they're talking about. So, anyway, the state would ask that the district court be reversed, because the state court resolution was not objectively unreasonable under AEDPA. Thank you very much. Thank you, counsel. The case will be submitted.